UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERRY ALLEN LAND,<br><br>  Plaintiff,<br><br>  v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>  Defendant. | No. 1:20-cv-00236-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**<br><br>**(Doc. 17, 18)** |

### I. Introduction

Plaintiff Perry Allen Land ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1] *See* Docs. 16, 17, 18. After reviewing the record the Court finds that substantial evidence and applicable law support the ALJ's decision. Plaintiff's appeal is therefore denied.

### II. Procedural Background

On December 2, 2015 Plaintiff applied for disability insurance benefits. AR 282–83. Plaintiff claimed disability beginning October 3, 2013 due to high blood pressure, anxiety, depression, spinal fusion surgery and seizures. AR 343. The Commissioner denied the application initially on May 19, 2016 and on reconsideration on August 29, 2016. AR 139, 155.

Plaintiff requested a hearing which was held before an Administrative Law Judge (the "ALJ") on September 6, 2018. AR 74–99. On November 14, 2018 the ALJ issued a decision

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 6 and 9.

1

denying Plaintiff's application. AR 25–45. The Appeals Council denied review on October 11, 2019. AR 7–13. On February 14, 2020 Plaintiff filed a complaint in this Court. Doc. 1.

### III. Factual Background

#### A. Plaintiff's Testimony

Plaintiff had a high school education. AR 79. He did not have a driver's license and relied on his sister to get around. AR 79. He did not need help showering or dressing. AR 80. He did some household chores, cooked, shopped and did some yard work. AR 80. On a typical day he hung out at his dad's agricultural irrigation shop and tinkered around. AR 80. He previously worked as a manager at Nelson Concrete Pipe. AR 82. He operated a backhoe and lifted bags of concrete weighing up to 94 pounds. AR 83. He could no longer lift that much weight. AR 82. He could pick up 20 to 50 pounds and put it down, but couldn't drag it around. AR 88. He could buy two bags of groceries and stop for a break halfway in between. AR 88.

His neck surgery helped his neck pain. AR 85. More recently he experienced pain going from his right shoulder down to his back on the right side. AR 85–86. He had difficulty walking and using stairs. AR 86. His equilibrium was thrown off. AR 86. He took gabapentin, Lexapro and blood pressure medication. AR 87. He did not take pain medication. AR 89. He was hospitalized for six days in 2015 due to seizures. AR 87. He had some mild seizures since then including a seizure two weeks earlier. AR 87–88, 91. He had no problems with sitting. AR 88. He could stand fine but he would get tired. AR 88. He could walk half a mile before taking a break. AR 88. He had difficulty reaching overhead due to his shoulder. AR 89. He struggled with anxiety. AR 89. He didn't like going to Walmart or waiting in line for two hours. AR 89. When he went to a store he wanted to get in and get out. AR 89. He could not sit through an entire TV program. AR 89–90. As soon as a commercial came on he switched channels. AR 90. His girlfriend paid the bills. AR 90. Lexapro helped his anxiety. AR 90. He drank three to four beers on a typical evening. AR 91.

He generally recovered from seizures after a day or so. AR 92. He didn't do many chores. AR 92. He could mow a lawn for 15 minutes but then would need to stop and take a break. AR 92. He experienced panic attacks but not as bad as he used to. AR 93. He used to

2

have them every day. AR 93. He had them less now but still could have as many as five in a day. AR 93. Going to the mall or being in crowds triggered his anxiety. AR 93. Almost every weekend he felt like he wasn't able to do anything at all. AR 93.

### B. <u>Vocational Expert</u>

The VE classified Plaintiff's past employment as an irrigation system installer at the medium exertional level per the DOT, and at the heavy exertional level as performed. AR 96. The ALJ posed a hypothetical to the VE regarding an individual with Plaintiff's vocational profile who could perform work at the light exertional level with occasional overhead pushing and pulling, occasional climbing, frequent overhead reaching, and a need to avoid concentrated exposure to extreme cold, heights and dangerous machinery. AR 96. The VE testified that such an individual could not perform Plaintiff's past work as an irrigation system installer, but could perform other jobs existing in significant numbers in the national economy including: photocopy machine operator, housekeeping cleaner and parking lot attendant. AR 97. If the individual were limited to simple and routine tasks, the same jobs would be available. AR 97. If the individual would be off task 20% of the day, no work would be available. AR 97. If the individual would be expected to miss work four days per month, no work would be available. AR 97.

### C. <u>Medical Records</u>

Plaintiff visited Dr. Thiagarajan on August 12, 2012 with a complaint of moderate radicular arm pain, myalgias, paresthesia and weakness beginning two months earlier. AR 422. Dr. Thiagarajan ordered a cervical spine MRI which showed neural foraminal stenosis ranging from moderate to advanced, central subarticular osteophyte disc complex, and spinal stenosis ranging from moderate to severe. AR 448. On November 28, 2012 Dr. Siddique performed cervical fusion surgery. AR 470, 472.

Plaintiff was doing well as of his May 21, 2013 post-surgery follow up visit with some shoulder soreness, but no significant neck or arm pain and good range of motion. AR 782. Dr. Siddique noted that an x-ray showed instrumentation was in an excellent position. AR 782. Dr. Siddique stated that Plaintiff could return to work as a construction worker in two weeks. AR

782.

On July 18, 2013 Plaintiff was examined by Dr. Wlasichuk in connection with a prior disability application. AR 494. Examination notes revealed cervical spine muscle tightness to palpation, upper trapezius muscle spasm, 4-4+/5 upper extremity motor strength, but normal muscle bulk and tone. AR 495–96. Dr. Wlasichuk assessed chronic cervical pain post-surgery and opined that Plaintiff could perform no forceful pushing, pulling, overhead reaching or upper gaze. AR 496. A December 9, 2013 follow up examination with Dr. Thiagarajan reflected musculoskeletal findings of good range of motion, strength and tone. AR 744. Dr. Thiagarajan noted that Plaintiff was doing well post-surgery and was back to work but advised against lifting more than 15 pounds. AR 744.

On October 24, 2014 Plaintiff visited the ER with syncope. AR 786. He followed up with a nephrologist, Dr. Vemuri, on November 7, 2014 who suspected syncope was related to alcohol withdrawal though Plaintiff stated his last drink was ten days earlier. AR 789. He was prescribed Xanax for anxiety, referred to neurology and advised not to drive until cleared by neurology. AR 789. On April 3, 2015 Plaintiff followed up with Dr. Thiagarajan regarding his seizures, a brain MRI found mild atrophy. AR 752. Plaintiff was admitted to Sierra View District Hospital on October 8, 2015 with severe delirium tremens and seizures. AR 540. He was placed in soft restraints for 24 hours. AR 540. A brain CT was negative for acute intracranial abnormality. AR 681–82. He was discharged eight days later. AR 540.

Plaintiff followed up with Dr. Thiagarajan on December 17, 2015 with moderate intensity anxiety beginning one year earlier. AR 760. He was advised not to drink and to take Lexapro daily. AR 762. Plaintiff followed up with his primary care physician, Dr. Buttan, throughout 2017 for various conditions including anxiety and was prescribed Trazadone AR 822–33.

### D. Medical Opinions and Administrative Findings

On April 20, 2017 Plaintiff's primary care provider, Dr. Buttan, completed a physical medical source statement. AR 778–780. Dr. Buttan opined that Plaintiff could lift and/or carry twenty pounds frequently, stand and walk without limitation, sit six hours in an eight-hour workday, never climb ladders, rarely crouch/squat and climb stairs, occasionally twist and

4

frequently stoop. AR 779. Dr. Buttan opined that Plaintiff had no significant limitations with reaching, handling or fingering. AR 779. Dr. Buttan identified psychological conditions of depression, anxiety and personality disorder. AR 780. Dr. Buttan opined that Plaintiff was incapable of even low stress jobs and would miss more than four days per month from work due to impairments or treatment. AR 780.

On April 18, 2016 Dr. Izzi performed a consultative psychiatric examination. AR 772–75. Plaintiff had dysphoric affect, could recall one of three words on delay and could not spell "world" backwards. AR 773. Dr. Izzi diagnosed unspecified anxiety disorder. AR 774. Dr. Izzi opined that Plaintiff could consistently perform simple and repetitive tasks but had moderate limitations in his ability to get along with peers or be supervised in a work like setting. AR 774.

On March 14, 2016 Dr. Siekerkotte performed a consultative internal medicine examination. AR 766–69. Plaintiff reported that his cervical fusion surgery was successful but that he still had limitations including inability to lift items overhead. AR 766. Dr. Siekerkotte noted decreased shoulder range of motion. AR 769. She diagnosed bilateral shoulder pain, back pain and seizures. AR 768. She opined, in relevant part, that Plaintiff was limited to occasional overhead and forward reaching due to decreased shoulder range of motion. AR 769.

On April 8, 2016 non-examining state agency medical consultant I. Ocrant, MD reviewed Plaintiff's medical file at the initial level and opined, in relevant part, that Plaintiff was limited to occasional overhead pushing, pulling and reaching based on limited shoulder mobility due to cervical spine degenerative disc disease. AR 134–35. On August 26, 2016 non-examining state agency medical consultant L. Kiger, MD reviewed Plaintiff's medical file at the reconsideration level and concurred with Dr. Ocrant's assessment except as to overhead reaching, which Dr. Kiger opined Plaintiff could perform frequently. AR 151.

In May 2016 and August 2016, non-examining state agency psychiatric consultants E. Aquino-Caro, MD and J. Collado, MD reviewed plaintiff's psychiatric treatment records at the initial and reconsideration levels, respectively. Both opined that Plaintiff's mental impairments were non-severe. AR 132, 148.

## IV. Standard of Review, Generally

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted).

If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## V. The Disability Standard

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy, given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

**VI.     The ALJ's Decision**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from his alleged disability onset date of October 3, 2013 through his date last insured of June 30, 2017. AR 30. At step two, the ALJ found that Plaintiff had the following severe impairments: cervical degenerative disc disease, status post C4-6 anterior cervical discectomy and fusion, syncope, obesity, alcohol abuse, and anxiety. AR 30. The ALJ found that Plaintiff's hypertension was non-severe. AR 31. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 31. Prior to step four,

the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b), with occasional overhead pushing and/or pulling, frequent overhead reaching; occasional climbing; no concentrated exposure to extreme cold, heights or dangerous machinery; and a limitation to simple and routine tasks. AR 32–37. At step four, considering Plaintiff's RFC, the ALJ found that Plaintiff could not perform his past relevant work as an irrigation systems installer. AR 37. At step five, the ALJ found that Plaintiff could perform other jobs existing in significant numbers in the national economy: photocopy machine operator, housekeeping cleaner and parking lot attendant. AR 38. Accordingly, the ALJ found that Plaintiff had not been under a disability from his alleged disability onset date of October 3, 2013 through his date last insured of June 30, 2017. AR 39.

### VII. Issues Presented

Plaintiff alleges two errors in the ALJ's analysis. First, Plaintiff contends the ALJ failed to offer sufficient reasoning for departing from the examining source opinion of Dr. Izzi regarding Plaintiff's moderately limited ability to get along with peers, or be supervised in a work-like setting. Br. at 5–6, Doc. 16. Second, Plaintiff contends that the ALJ failed to offer sufficient reasoning for discounting the opinions of Drs. Siekerkotte, Ocrant and Kiger as to Plaintiff's limited ability to reach forward or overhead. Br. at 6–8.

#### A. Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC).

"[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins*, 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

For applications filed before March 27, 2017, the regulations provide that more weight is generally given to the opinion of treating physicians, which are given controlling weight when well supported by clinical evidence and not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(c)(2); *see also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996) (noting that the opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in residual functional capacity determinations). An ALJ may reject an uncontradicted opinion of a treating or examining physician only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining physician may be rejected for "specific and legitimate" reasons. *Id.* at 830. In either case, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Regardless of source, all medical opinions that are not given controlling weight are evaluated using the following factors: examining relationship, treatment relationship, supportability, consistency, and specialization. 20 C.F.R. § 404.1527(c). The opinion of a non-examining physician (such as a state agency physician) may constitute substantial evidence when it is

"consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

### B. Dr. Izzi's Opinion Regarding Non-Exertional Limitations

On April 18, 2016, Dr. Izzi performed a consultative psychiatric examination. AR 772–75. Plaintiff had dysphoric affect, could recall one of three words on delay and could not spell "world" backwards. AR 773. Dr. Izzi diagnosed unspecified anxiety disorder. AR 774. Dr. Izzi opined that Plaintiff could consistently perform simple and repetitive tasks, but had moderate limitations in his ability to get along with peers or be supervised in a work-like setting due to his mood disorder. AR 774.

The ALJ accorded Dr. Izzi's opinion "significant weight" but only included the limitation regarding simple and repetitive tasks in Plaintiff's RFC. AR 32. The ALJ did not include the moderate limitations Dr. Izzi identified regarding Plaintiff's ability to get along with peers or be supervised in a work-like setting. AR 32. Plaintiff contends that this amounted to an impermissible rejection of Dr. Izzi's specified limitations without explanation. Br. at 5. Alternatively, Plaintiff contends that the ALJ may have simply overlooked the moderate social limitations in Dr. Izzi's opinion which would be harmful error considering the VE was not asked whether those limitations would affect Plaintiff's ability to perform other work. *See Embrey v. Bowen*, 849 F.2d 418 (9th Cir. 1988); *Thomas v. Chater*, No. CIV. 96-20690 SW PVT, 1997 WL 383172, at *3 (N.D. Cal. July 2, 1997) (noting that an ALJ may rely on the testimony of a VE as substantial evidence only if the hypothetical question posed to the VE includes all of Plaintiff's limitations).

Defendant acknowledges that the ALJ did not explicitly discount those moderate social limitations but argues that such limitations are nevertheless unsupportable by the record because Plaintiff himself reported he was able to get along "good" with authority figures and routinely associated with others without difficulty. Resp. at 7, Doc. 17. Finally, in reply, Plaintiff argues that Defendant's observation is an impermissible post-hoc rationalization because "[t]he ALJ did not cite such evidence nor draw inferences arising therefrom when implicitly rejecting portions of Dr. Izzi's opinion." Reply at 2, Doc. 18.

Contrary to Plaintiff's assertion, the ALJ did indeed cite the statements from Plaintiff's function report noting that Plaintiff "admitted having no problems getting along with family, friends, neighbors, or others," and was "'good' at getting along with authority figures." AR 33 (citing Exhibit 9E, AR 357–65). The ALJ simply cited these statements at a different portion of her opinion. The ALJ discussed the contents of Plaintiff's function report and his oral testimony in finding that they undermined "the severity of the claimant's alleged limitations," including his alleged limitations in "social functioning." AR 33. That conclusion applies with equal logical force to Dr. Izzi's opinion regarding Plaintiff's social functioning, though the ALJ did not reiterate that reasoning in her subsequent discussion of Dr. Izzi's opinion.

Plaintiff's assertion that the ALJ did not "draw inferences arising" from those facts "when implicitly rejecting portions of Dr. Izzi's opinion" is not well taken. No inferential leaps are required in order to make a connection between the contents of Plaintiff's function report and Dr. Izzi's opinion on his social limitations. Dr. Izzi opined that Plaintiff was moderately limited in his ability to get along with peers or accept supervision, while Plaintiff reported that he had no difficulty getting along with others and got along "good" with authority figures. Plaintiff's function reported directly undermines Dr. Izzi's opinion even though the ALJ made no explicit connection between the two. The ALJ did not err in omitting social limitations from Plaintiff's RFC, a conclusion which was supported by the non-examining physicians (who identified no severe mental impairments) and by Plaintiff's own function report. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (noting that the opinion of a non-examining physician (such as a state agency physician) may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record.").

### C. <u>Drs. Siekerkotte, Ocrant and Kiger's Opinions Regarding Reaching</u>

Dr. Siekerkotte (the CE) opined, in relevant part, that Plaintiff was limited to occasional overhead reaching and occasional forward reaching due to decreased shoulder range of motion. AR 769. Non-examining state agency medical consultant I. Ocrant, MD opined that Plaintiff was limited to occasional overhead pushing, pulling and reaching based on limited shoulder mobility.

AR 134–35. Non-examining state agency medical consultant L. Kiger, MD concurred with Dr. Ocrant's assessment except as to overhead reaching which Dr. Kiger opined Plaintiff could perform frequently. AR 151. Plaintiff contends the ALJ erred in rejecting these opinions without explanation in that she limited Plaintiff to frequent overhead reaching, not occasional overhead reaching or occasional forward reaching.

One clarification is necessary at the outset, namely that the ALJ did not reject all three opinions. Rather, she adopted the occasional overhead push/pull limitation consistent with all three opinions and adopted the frequent overhead reaching limitation identified by Dr. Kiger (but not the occasional overhead reaching limitation identified by the other two, or the occasional forward reaching limitation identified by Dr. Siekerkotte). Although Dr. Kiger noted that Plaintiff's "OH [overhead] activities" were limited to "occ" (occasional), he made that notation in the exertional limitation's subheading for "push and/or pull." AR 150. Under the manipulative limitation section, Dr. Kiger opined that Plaintiff's ability to reach in any direction was "limited to frequent d/t DROM of the shoulders." AR 151. Thus, the ALJ did not reject Dr. Kiger's opinion. Rather, she incorporated the same limitations Dr. Kiger identified on overhead activities, namely occasional pushing/pulling and frequent reaching.

The ALJ did not articulate the subtle differences in the three opinions regarding Plaintiff's limitations on reaching, nor did she overtly explain her reasoning for limiting Plaintiff to frequent overhead reaching as opposed to occasional. Rather, she noted that she gave "significant weight to the opinions of the internal medicine consultative examiner and the State agency physical medical consultants," opinions which were "generally consistent in that they all assess the claimant is able to perform a range of work at the light exertional level with some differences in the degree of specific function-by-function limitations." AR 36. She further noted that "[n]o single assessment has been completely adopted as the residual functional capacity determined

herein. The undersigned has adopted those specific restrictions on a function-by-function basis that are best supported by the objective evidence as a whole." AR 36.

As to the objective evidence as a whole, the ALJ cited pertinent medical records noting that Plaintiff did well post cervical spine surgery, he exhibited good range of motion on examination, his instrumentation was in excellent position upon follow-up x-ray, and his physical examinations were generally unremarkable. AR 34–35 (citing Ex. 9F, 12F, 17F, 16F/2, 22F). The ALJ did however acknowledge Plaintiff's testimony that he had difficulty lifting overhead with his right shoulder. AR 89 ("With my right arm, yes . . . It's hard for me just to change a light bulb."). The ALJ reasonably accounted for Plaintiff's objectively documented and self-reported difficulties with overhead activities and limited him to occasional overhead pushing/pulling and frequent reaching.

Although the ALJ did not fully incorporate Drs. Siekerkotte and Ocrant's identified reaching limitations, the ALJ incorporated their opinions in virtually every other respect, including sitting/standing/walking (6 of 8 hours), lifting/carrying (20 lbs occasionally and 10 lbs frequently), pushing/pulling (occasional overhead), postural activities (occasional climbing), and environmental limitations (no extreme cold, heights or dangerous machinery). In the limited respects that the ALJ's RFC differed from the opinions of Drs. Siekerkotte and Ocrant (regarding occasional overhead and forward reaching) the RFC was supported by the opinion of Dr. Kiger and was reasonably supported by the objective medical evidence cited by the ALJ. In sum, the RFC was supported by substantial evidence. *See Thomas*, 278 F.3d at 957 (noting that the opinion of a non-examining physician (such as a state agency physician) may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record.").

**VIII. Order**

For the reasons stated above, the Court finds that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled. Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is denied. The Clerk of Court is directed to enter judgment in favor of Defendant Andrew Saul, Commissioner of Social Security, and against Plaintiff Perry Allen Land.

IT IS SO ORDERED.

Dated: **May 3, 2021**  /s/ **Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE